IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANDRE' D. EVANS,

      Plaintiff,

v.                                                              Civil Action No. 3:11CV104

JOHN JABE, *ET AL.*,

      Defendants.

## MEMORANDUM OPINION

      Andre' D. Evans, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983.[1] The action proceeds on his Particularized Complaint (ECF No. 23 ("Complaint")). The matter is now before the Court on Defendants'[2] Motion for Summary Judgment. (ECF No. 39.) Defendants provided Evans with appropriate *Roseboro*[3] notice. (ECF No. 41.) Evans has responded. (ECF No. 42.) This matter is ripe for judgment.

-------------------------------------------------

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Defendant C. Creque remains unserved. The remaining seven defendants ("Defendants") moved for summary judgment: John Jabe, Deputy Director Operations, Virginia Department of Corrections ("VDOC"); David Robinson, Eastern Regional Director, VDOC; D.B. Everett, Warden of Sussex II State Prison ("Sussex II"); M. Vargo, Assistant Warden of Sussex II; J. Halsey-Harris, Building 2 Unit Manager, Sussex II; Sergeant Mouring, A–Break Night Building Supervisor, Sussex II; and Sergeant J. Shanks, B–Break Night Building Supervisor.

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

For the reasons stated below, Defendants' Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART.

## I.   SUMMARY OF CLAIMS

Evans's claims stem from a lockdown occurring at Sussex II between the dates of August 31, 2010 and September 9, 2010.  During that period, Evans alleges that "defendants failed to provide him with hot meals, sufficient calories, and meals served within the religiously required time period during the Muslim holy month of Ramadan. (month of fasting)." (Compl. 1.)  Evans "also contends that the defendants regularly cancel and cut short the weekly [*sic*] Jummah prayer service, even locking the institution down in the middle of the Holy month of Ramadan." (*Id.*)  Evans's claims are best summarized as follows:[4]

Claim One:   Defendants violated Evans's First Amendment[5] right to free exercise of his religion by:

(a) failing to provide him with adequate meals served during the religiously required time period due to an institutional lockdown; and, (b) regularly canceling and cutting short weekly Jummah prayer service.

Claim Two:   Defendants violated Evans's Eighth Amendment[6] rights by failing to provide hot meals and sufficient calories during Ramadan due to an institutional lockdown.

---

[4]   Despite the Court's admonitions in the Memorandum Order entered on September 27, 2011 (ECF No. 19), Evans failed to provide a particularly coherent summary of his claims.  Accordingly, the Court has done its best to parse his allegations in a logical fashion.

[5]   "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[6]   "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Claim Three:   Defendants violated Evans's Fourteenth Amendment[7] rights.

Claim Four:   Defendants placed a substantial burden on Evans's exercise of his religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[8] by interfering with Ramadan fasting requirements due to an institutional lockdown.

## II.   SUMMARY JUDGMENT

### A.   Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

---

[7] Evans fails to identify which aspect of the Fourteenth Amendment Defendants violated. The Constitution provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[8] "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
      **(1)** is in furtherance of a compelling governmental interest; and
      **(2)** is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C. § 2000cc–1(a).

3

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

### B.     Defendants' Fail to Adequately Address Claims One (a), Two, and Four

Defendants' Memorandum in Support of the Motion for Summary Judgment adequately addresses and sets forth the argument that Evans failed to exhaust his administrative remedies for Claim One (b) and adequately addresses Claim Three. It does not, however, adequately address Evans's Eighth Amendment claim (Claim Two), First Amendment claim (Claim One (a)) and RLUIPA claim (Claim Four). The Court appreciates the difficulty posed by Evans's less than lucid statement of his claims. Nevertheless, even with such constraints, Defendants' Memorandum simply fails to address comprehensively Evans's claims and generally provides insufficient legal argument.

For example, Evans alleges that on six occasions Defendants provided him with inadequate nutrition when they failed to serve him complete breakfast trays during the time prescribed by Ramadan. (Compl. 1–2.) Defendants, however, limit their discussion of his Eighth Amendment claim to one instance when Evans alleges Defendants served him spoiled milk. (Mem. Supp. Mot. Summ. J. 9.)

In addressing Evans's RLUIPA claim, Defendants contend that Evans must show more than negligence in order to state a claim. (Mem. Supp. Mot. Summ. J. 10–11.) Defendants cite no legal authority that directly supports that proposition. Defendants also fail to address the general unavailability of monetary damages for RLUIPA claims, leaving injunctive relief as the appropriate remedy. *See Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009); *Madison v. Virginia*, 474 F.3d 118, 133 (4th Cir. 2006). Moreover, it appears that mootness may bar any

request for injunctive relief under RLUIPA. Evans alleges that Defendants placed a substantial burden on his religious exercise during a ten-day period in 2010 when they instituted a lockdown that occurred during Ramadan and occasionally failed to provide appropriate pre-dawn meals. The lockdown ended on September 9, 2010. Evans alleges no subsequent instance of a lockdown and ensuing meal problems during Ramadan which substantially burdened his religious exercise. Defendants fail to address why the end of the lockdown on September 9, 2010 would not render Evans's claim for injunctive relief moot. *See Miles v. Moore*, No. 3:10cv162, 2012 WL 4866561, at *4 (E.D. Va. Oct. 12, 2012) ("'Because the requirement of a continuing case or controversy stems from the Constitution, it may not be ignored for convenience's sake.'" (quoting *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007))).

Balancing the above interests with the general rule that a party shall not file separate motions for summary judgment, *see* E.D. Va. Loc. Civ. R. 56(C),[9] the Court concludes the appropriate disposition is to deny without prejudice the Motion for Summary Judgment with respect to Claims One (a), Two, and Four. Defendants shall have thirty (30) days to resubmit their Motion for Summary Judgment with respect to those claims. The Memorandum in Support of the Motion for Summary Judgment must adequately brief the remaining claims and any such affirmative defenses Defendants intend to raise.

---

[9]   Unless permitted by leave of Court, a party shall not file separate motions for summary judgment addressing separate grounds for summary judgment. E.D. Va. Loc. Civ. R. 56(C)

The Court also notes that any future response filed by Evans must comply with Rule 56(B) of the Local Civil Rules for the United States District Court for the Eastern District of Virginia. *See* E.D. Va. Loc. Civ. R. 56(B).[10]

### C.    Submissions with Respect to Exhaustion

In support of their Motion for Summary Judgment, Defendants ask the Court to dismiss Claim One (b) because Evans failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their Motion for Summary Judgment, Defendants submit: (1) the affidavit of C. Boone, the Grievance Coordinator at Sussex II (Mem. Supp. Mot. Summ. J. ("Boone Aff.")); (2) the affidavit of M. Vargo, the Warden at Sussex II (*id.* "Vargo Aff."); (3) VDOC Operating Procedure § 866.1 (*id.* Encl. A ("Operating Procedure § 866.1")); and, (4) copies of grievances, both formal and informal, filed by Evans (*id.* Encl. B–C).

In response, Evans submitted a notarized "Reply to the Defendants['] Motion for Summary Judgment." Evans's Reply fails to constitute admissible evidence because Evans failed to swear to its contents under penalty of perjury and it lacks any indication that the notary

---

[10] The Rule provides, in relevant part:

> A brief in response to [a motion for summary judgment] shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. R. 56(B).

administered an oath to Evans. *See McCoy v. Robinson*, 3:09CV555, 2010 WL 3735128, at *2 (E.D. Va. Sept. 22, 2010) (citing *Nissholwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305–07 (5th Cir. 1988)). Moreover, in his Reply, Evans fails to direct the Court to any evidence that he wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).

Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Evans.

### III.   UNDISPUTED FACTS PERTAINING TO EXHAUSTION

#### A.   VDOC's Grievance Procedure

Operating Procedure § 866.1 "provides an administrative process for resolving offender issues and complaints through fair, prompt decisions and actions in response to complaints and grievances from offenders incarcerated in Department of Corrections, Division of Operations facilities." (Operating Procedure § 866.1.I.) Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (*Id.* § 866.1.V.A.) Generally, this requires an inmate to file an "Informal Complaint." (*Id.* § 866.1.V.A.1.) [11]   If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out a standard form. (*Id.* § 866.1.VI.A.2.)

---

[11] The Court omits the emphasis in the quotations to the Operating Procedure.

7

"The original Regular Grievance (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.)  The offender must attach to the Regular Grievance a copy of the Informal Complaint. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.2.)  An inmate must file a Regular Grievance within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

Up to three levels of review for a Regular Grievance exist. (*Id.* § 866.1.VI.C.)  The Facility Unit Head where the offender is confined conducts the Level I review. (*Id.* § 866.1.V.C.1.)  If dissatisfied with the determination at Level I, the offender may appeal the decision to Level II, a review handled by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.f.)  If the offender fails to qualify for further appeal, "the offender should be advised that he/she has exhausted all administrative remedies." (*Id.*)

**B.      Evans's Grievance Related Submissions**

On August 18, 2010, the grievance officer received Evans's Informal Complaint, complaining that on August 12, 2010, he received spoiled milk with his breakfast tray and never

8

received replacement milk.  (Boone Aff. ¶ 11; *Id.* Encl. B.)   Sergeant Shank responded to
Evans's Informal Complaint stating:

> On 8/12/2010 Ramadan meal were served to you @4:29 am and yes offender in
> cell 2A14 stated hi[s] milk smelled spoiled.  Sgt Shank called to the kitchen, after
> waiting for the kitchen to send the milk, the milk was not spoil it was the tray that
> the kitchen had put it on.  Offender Evans never stated anything to me but I did
> state to them that the bag that the milk was in was spoil and when 2 picked up
> trays.  Offender Evans completed his milk.  No food was on his tray when 2
> picked it up.

(Boone Aff. Encl. B.)   Evans filed no Regular Grievance with regard to this Informal
Complaint.

On September 29, 2010, Evans submitted a Regular Grievance, generally objecting to
"being locked down during the Holy month of Ramadan for a non-emergency lockdown . . . .
And as a result my religious rights (faith needs) were not met." (*Id.* Encl. C. at PageID# 153
(capitalization corrected).)[12]   Evans also claimed that Sussex II "breached a[n] agreement
reached between" the VDOC and the Muslim Chaplain Services. (*Id.*)   Warden Everett provided
a Level I response on October 26, 2010, noting:

> [P]olicy (OP 841.3 – Offender Religious Programs) does not reveal that an
> official lockdown cannot take place during religious activities.  As previously
> noted, lockdown involves the security of both staff and offenders thus this issue is
> paramount in the safe and orderly operation of any institution.  At no time was
> this lockdown planned to disrupt Ramadan Services.

(Boone Aff. Encl. C. at PageID# 154.)   Thus, Warden Everett determined Evans's grievance was
unfounded. (*Id.*)

---

[12] Neither party submitted the Informal Complaint preceding this Regular Grievance.
The Level I response indicates, however, that Evans filed an Informal Complaint complaining
about the lockdown and received a response on September 22, 2010.  (Boone Aff. Encl. B.)
Enclosure C includes Evans's Regular Grievance, the Level I response, and the Level II
response.  The Court refers to Enclosure C based upon the PageID# assigned by the Court's
CM/ECF docketing system.

Evans appealed the grievance to Level II and on November 3, 2010, the Regional Director upheld the Level I response. (Boone Aff ¶ 14; Encl. C. at PageID# 156.)

## IV.  ADMINISTRATIVE EXHAUSTION ANALYSIS

The exhaustion requirement demands that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Evans failed to exhaust his administrative remedies with regard to Claim One (b). Evans failed to pursue any grievance regarding Jummah Prayer service during the lockdown. Accordingly, Claim One (b) will be dismissed.

## V.  FOURTEENTH AMENDMENT

In Claim Three, Evans asserts, without elaboration, that Defendants violated his Fourteenth Amendment rights. Defendants address Evans's claim as failing to demonstrate a violation of equal protection.

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To demonstrate a violation of the

10

Equal Protection Clause, Evans's allegations must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"; and, (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Evans makes no allegation and provides no evidence demonstrating that Defendants discriminated against him.

Moreover, Evans fails to mention the Due Process Clause of the Fourteenth Amendment, much less provide any argument in support of such claim. Accordingly, Evans's Fourteenth Amendment claim WILL BE DISMISSED. *See* 28 U.S.C. § 1915(e)(2) (requiring courts to dismiss claim if it "fails to state a claim on which relief may be granted").

## VI.    CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 39) will be GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.

An appropriate Order will accompany this Memorandum Opinion.

/s/
John A. Gibney, Jr.
United States District Judge

Date: 3/18/13
Richmond, Virginia