IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANDRE' D. EVANS,

    Plaintiff,

v.                                                      Civil Action No. **3:11CV104**

JOHN JABE, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Andre' D. Evans, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983.[1] The action proceeds on his Particularized Complaint (ECF No. 23 ("Complaint")). By Memorandum Opinion and Order entered March 19, 2013, the Court granted summary judgment for Defendants on Claims One (b) and Three and ordered further briefing on Claims One (a), Two, and Four. *Evans v. Jabe*, No. 3:11CV104, 2013 WL 1155532, at *2, *5 (E.D. Va. Mar. 19, 2013). The matter is now before the Court on Defendants'[2] Supplemental Motion for Summary Judgment ("Supp'l Mot. Summ. J.," ECF No. 53) and the

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The remaining seven defendants ("Defendants") moved for summary judgment: (1) John Jabe, Deputy Director Operations, Virginia Department of Corrections ("VDOC"); (2) David Robinson, Eastern Regional Director, VDOC; (3) D.B. Everett, Warden of Sussex II State Prison ("Sussex II"); (4) M. Vargo, Assistant Warden of Sussex II; (5) J. Halsey-Harris, Building 2 Unit Manager, Sussex II; (6) Sergeant Mouring, A–Break Night Building Supervisor, Sussex II; and, (7) Sergeant J. Shanks, B–Break Night Building Supervisor.

Second Supplemental Memorandum in Support ("Second Supp'l Mem. Supp.," ECF No. 61). Evans was provided with appropriate *Roseboro*[3] notice. (ECF No. 55, 64.) Evans has not responded. This matter is ripe for judgment. For the reasons stated below, Defendants' Supplemental Motion for Summary Judgment will be GRANTED.

## I. MOTION FOR EXTENSION OF TIME

Evans seeks an indefinite extension of time in which to file his response in opposition to Respondents' Supplemental Motion for Summary Judgment and Second Supplemental Memorandum in Support. ("Third Motion for Extension of Time," ECF No. 67.) The Court has previously granted Evans two extensions of time. (ECF No. 64, 66.) In his Second Motion for Extension of Time, Evans indicated that he suffers from epilepsy which limits his current ability to litigate his claims and sought an indefinite extension of time in which to file his response. (ECF No. 65, at 1–3.) In granting that motion, the Court explained that to the extent Evans felt that he was unable to litigate his claims, he could move to voluntarily dismiss the action without prejudice. (ECF No. 66, at 1.) The Court provided Evans until December, 5, 2013 to file a response. (*Id.*). On December 4, 2013, Evans filed his Third Motion for Extension of Time, but has yet to respond to the Supplemental Motion for Summary Judgment. (ECF No. 67.)

Under Federal Rule of Civil Procedure 6(b)(1)(A)[4] the Court may grant an extension of time for good cause shown. Fed. R. Civ. P. 6(b)(1)(A). However, in the Eastern District of Virginia "[a]ny requests for an extension of time relating to motions . . . in general, will be looked upon with disfavor." E.D. Va. Loc. Civ. R. 7(I). In his Third Motion for Extension of

---

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[4] "When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with . . . motion . . . if a request is made, before the original time or its extension expires . . . ." Fed. R. Civ. P. 6(b)(1)(A).

2

Time, Evans again claims that he is "unable to get access to the law library due to his being in the prison hospital" and is "unable to gather necessary rebuttal affidavits, or any other legal or factual material that supports his claims." (ECF No. 67, at 1–2 (capitalization and spelling corrected).) Evans admits that he has an "unknown time of release back to general population." (*Id.* at 2.) Evans fails to provide sufficient factual support or good cause to justify an indefinite extension under Federal Rule of Civil Procedure 6(b)(1)(A). Nothing submitted by Evans indicates when he may actually be able to litigate his claims. Evans filed his action in February 2011, and the Court will not permit the action to languish on its docket until some indefinite future date. *Cf. McCoy v. Abassi*, No. 3:10CV875, 2012 WL 4933301, at *2 (E.D. Va. Oct. 16, 2012) ("'The court cannot countenance the bringing of an action . . . to languish on its docket until some indefinite future date when the plaintiff may actually be able to serve those defendants.'" (quoting *Villeneuve v. Connecticut*, No. 09–P–S, 2009 WL 1783540, at *2 (D. Me. June 22, 2009))).

While Evans brings his motion under Fed. R. Civ. P. 6(b), he also seeks additional time to obtain discovery in the form of affidavits and factual material to support his opposition. Under Federal Rule of Civil Procedure 56(d), a party opposing summary judgment may request a continuance when the party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." Fed. R. Civ. P. 56(d). To obtain an extension, the party must make more than a conclusory allegation that additional discovery is needed. *See Hamilton v. Geithner*, No. 1:08CV1112 (JCC), 2009 WL 1683298, at *6 (E.D. Va. June 15, 2009).[5] Instead, a Rule 56(d) affidavit "must specifically identify what evidence

---

[5] While *Hamilton* cites former Federal Rule of Civil Procedure 56(f), Federal Rule of Civil Procedure 56(d) "carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56(d), Advisory Committee Notes, Amend. 2010.

discovery will turn up and how that evidence will allow the party to oppose summary judgment." *Id.* (citations omitted).

Here, Evans failed to show by affidavit or declaration and failed to identify with specificity in any other manner what evidence additional discovery would turn up to support his opposition to summary judgment. *See, e.g., Morrow v. Farrell*, 50 F. App'x 179, 180 (4th Cir. 2002) (finding no abuse of discretion by district court when it denied a continuance because plaintiff "failed to identify any specific facts that he was yet to discover"); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). Evans generally states he needs time to "gather necessary rebuttal affidavits" or "factual material that supports his claim." (ECF No. 67, at 2 (capitalization corrected).) Evans "fail[s] to identify any facts essential to his opposition that [are] not already available to him." *Boyd v. Guiterrez*, 214 F. App'x 322, 323 (4th Cir. 2007). The facts essential to Evans's opposition largely lay within his control and Evans could produce such information from the infirmary. Moreover, as discussed below, the Court dismisses the majority of Evans's claims because he cannot show that Defendants substantially burdened his religion. Evans's generalized request for a continuance fails to adequately support his motion. Accordingly, Evans's Third Motion for Extension of Time will be DENIED. (ECF No. 67.)[6]

## II. SUMMARY OF CLAIMS

Evans's claims stem from a period of lockdown occurring at Sussex II between the dates of August 31, 2010 and September 9, 2010. During that period, Evans alleges that "defendants failed to provide him with hot meals, sufficient calories, and meals served within the religiously

---

[6] The Court's decision here does not preclude Evans from bringing future claims if Defendants substantially interfere with Evans's Ramadan fasting requirements.

4

required time period during the Muslim holy month of Ramadan. (month of fasting)." (Compl. 1.) Evans's remaining claims are best summarized as follows:[7]

Claim One: Defendants violated Evans's First Amendment[8] right to free exercise of his religion by:
(a) failing to provide him with adequate meals served during the religiously required time period due to an institutional lockdown.

Claim Two: Defendants violated Evans's Eighth Amendment[9] rights by failing to provide hot meals and sufficient calories during Ramadan due to an institutional lockdown.

Claim Four: Defendants placed a substantial burden on Evans's exercise of his religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[10] by interfering with Ramadan fasting requirements due to an institutional lockdown.

### III. SUMMARY JUDGMENT

#### A. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

---

[7] Despite the Court's admonitions in the Memorandum Order entered on September 27, 2011 (ECF No. 19), Evans failed to provide a particularly coherent summary of his claims. Accordingly, the Court has done its best to parse his allegations in a logical fashion.

[8] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[9] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[10] 42 U.S.C. § 2000cc–1(a).

5

depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In support of their Supplemental Motion for Summary Judgment, Defendants submit: (1) the affidavit of M. Vargo, the Warden at Sussex II (Mem. Supp. Mot. Summ. J. Ex. I ("Vargo Aff."), ECF No. 40-3); (2) a sun calendar for Waverly, Virginia in September 2010 (First Supp'l Mem. Supp. (ECF No. 54–1) ("Sun Calendar"); (3) the affidavit of L. Shear, Registered Dietician and Head Dietician for the VDOC (*id.* (ECF No. 54–3) ("Shear Aff.")); (4) the affidavit of M. Mouring, Sergeant at Sussex II (*id.* (ECF No. 54–4) ("Mouring Aff.")); (5) two Control Logs from Sussex II during the relevant period (*id.* (ECF Nos. 54–5 and 54–6)); (6) the supplemental affidavit of M. Vargo (Second Supp'l Mem. Supp. (ECF No. 61-1) ("Vargo Supp'l Aff.")); and, (7) the affidavit of J. Shanks, former Sergeant at Sussex II (*id.* (ECF No. 61-2) ("Shanks Aff.")).

As Evans failed to respond, Evans fails to cite to the Court any evidence, such as his Complaint, that he wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment). Evans's complete failure to present any evidence to counter Defendants' Supplemental Motion for Summary Judgment permits the Court to rely solely on Defendants' submissions in deciding the Motion for Summary Judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's

opposition to summary judgment.'" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))). Moreover, even if the Court considers the admissible evidence in Evans's Complaint, Defendants remain entitled to summary judgment.

Accordingly, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Evans.

## IV. UNDISPUTED FACTS

Sussex II began observing Ramadan on the evening of August 10, 2010 as directed by a memorandum from John Jabe, the Deputy Director of Operations. (Vargo Aff. ¶¶ 5, 7, Encl. A, at 1; Compl. 3.) The observance continued for thirty calendar days, until the evening of September 9, 2010. (Vargo Aff. ¶ 5; Encl. A, at 1.) The memorandum from Jabe and the Food Service Manual set forth that offenders must be fed a breakfast meal before sunrise and a dinner meal after sunset, and the offenders must have at least twenty minutes to consume the meal. (Vargo Aff. ¶¶ 5–6; Encl. A, at 2; Shear Aff. ¶ 4.) A third meal, or bag meal, was to be distributed to offenders during the evening hours, and offenders were authorized to take the bag meal back to their living areas to be finished within four hours. (Vargo Aff. ¶ 6; Encl. A, at 2; Shear Aff. ¶ 4.) Those offenders observing Ramadan receive the same number of daily calories (2700 to 2800) as those offenders not participating in Ramadan. (Shear Aff. ¶ 5.) Offenders have access to the meal menu for Ramadan and thus, would have known what meals would be provided. (Shanks Aff. ¶ 9.)

On August 31, 2010, due to security concerns, Sussex II was placed on full lockdown status and the prison officials used the lockdown to conduct the quarterly shakedown. (Vargo Aff. ¶ 7.) Sussex II makes every effort to not conduct quarterly shakedowns during Ramadan,

but security concerns during 2010 necessitated the shakedown at that time. (*Id.*) Normal operations resumed on September 9, 2010, when Sussex II came off of lockdown status. (*Id.*)

During the ten days that Sussex II was on lockdown during Ramadan, "the procedure for feeding breakfast to the offenders participating in Ramadan was no different from when the facility was not on lockdown." (Vargo Supp'l Aff. ¶ 4.) During the ten days of lockdown, Defendants Sergeant Mouring and Sergeant Shanks worked the 6 p.m. to 6 a.m. night shift. (Shanks Aff. ¶ 5; Mouring Aff. ¶ 5.) Sussex II served Ramadan dinner meals to offenders after sundown. (Shanks Aff. ¶ 5; Mouring Aff. ¶ 5.) For the breakfast meal, both prior to and during the lockdown, Sussex II served breakfast to the offenders observing Ramadan in their cells, allowing them twenty minutes before sunrise to consume their meals. (Shanks Aff. ¶¶ 6–7; Vargo Supp'l Aff. ¶ 7.)

The institution kitchen prepared the Ramadan food trays and the sergeants had no involvement in their preparation. (Mouring Aff. ¶ 8.) The building sergeant retrieved the Ramadan meal tray food cart from the kitchen and counted the trays before leaving to ensure the cart contained the correct number of Ramadan trays. (Shanks Aff. ¶ 8.) When the sergeant arrived in the housing unit with the food cart, he pulled a designated Ramadan inmate from his cell to count the meal trays a second time. (*Id.*) Once the inmate verified the number of trays, the inmate and sergeant distributed the trays. (*Id.* ¶ 9.) Each participating inmate's cell door bore a mark indicating whether the offender received the Nation of Islam tray or Sunni tray and the inmate was given the appropriate meal tray. (*Id.*) Each inmate bore responsibility "to remove the lid from his tray and make sure that there [was] no missing food or beverage items since the security staff is not responsible for the content of the tray." (*Id.*) If the inmate noticed

8

a missing item and reported it to the sergeant, the sergeant would notify the kitchen and a replacement food item would be delivered to the offender. (*Id.*)

On August 31, 2010, Evans received a breakfast food tray missing food items. (Compl. 1.) On September 2, 2010, Evans "was forced to not eat" because he received spoiled milk to eat with his breakfast cereal and unnamed defendants refused to replace it. (Compl. 1–2.) On September 3 and 4, 2010, Evans received his food tray "past time constraints set forth by religious edicts," forcing Evans to abstain from eating or drinking until the evening meal after sunset. (Compl. 2.) On September 6, 2010, Evans received a breakfast tray "missing the main course" and by the time Evans received the replacement tray "it was well after sunrise and the fasting period for the day had started." (*Id.*) Finally, on September 8, 2010, Evans received his breakfast tray "after farji (morning prayer) salat had already been performed, thereby not permitting him the chance to eat breakfast without breaking his fast." (*Id.*)[11]

---

[11] Defendants counter that Evans timely received his food each morning day and lodged no complaints to Officer Mouring or Shanks. Defendants explain that Evans was housed in Housing Unit 2 (HU2), A pod, during Ramadan in 2010. (Mouring Aff. ¶ 6.) The Control Log for HU2 A pod reflects that food trays were delivered to inmates beginning at 4:23 a.m. on August 31, 2010. (*Id.*) On September 2, 3, and 4, 2010 delivery was completed in the A pod by 4:53 a.m., 4:41 a.m., and 4:36 a.m., respectively. (*Id.*) On September 6 and 8, 2010, delivery was completed in the A pod by 4:27 a.m. and 4:37 a.m., respectively. (*Id.*) During the period of September 1, 2010 through September 9, 2010, sunrise occurred between 6:39 a.m. and 6:45 a.m., hours after the offenders received their Ramadan meal trays. (Sunrise Calendar at 1.) Sergeant Shanks avers that she has no recollection that offender Evans complained to her during Ramadan 2010 that his tray had missing food items. (Shanks Aff. ¶ 11.) Sergeant Mouring avers, "I know Evans," but swears that he has no recollection of Evans complaining of missing food items. (Mouring Aff. ¶ 8.) Sergeant Mouring explains that if Evans had informed him of a missing item or that he needed a replacement tray,

> [he] would have looked at the items on the tray. If there had been a missing food item or he needed a food item replaced, [he] would have contacted the kitchen for the item and would have either sent an officer to the kitchen to get the food item or [he] would have gone to pick it up [himself] so long as it was feasible based on institutional needs.

(*Id.*)

Sussex II had no lockdown during the 2011, 2012, or 2013 Ramadan observances. (Vargo Supp'l Aff. ¶ 9.) Evans also filed no grievances regarding Ramadan food service in 2011, 2012, or 2013. (*Id.*)

## V. EIGHTH AMENDMENT

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff "must . . . 'affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Furthermore, "'[t]he doctrine of *respondeat superior* has no application under [§ 1983].'" *Id.* (quoting *Vinnedge*, 550 F.2d at 928). Evans must demonstrate that each defendant had "personal knowledge of and involvement in the alleged [constitutional] deprivation" to establish liability under § 1983. *Id.*

To survive a motion for summary judgment on an Eighth Amendment "cruel and unusual punishment" claim, Evans "must prove two elements: (1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To satisfy the objective element of an Eighth Amendment claim, the deprivation complained of must be extreme and amount to more than the "'routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (some internal quotation marks omitted). Thus, Evans "'must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions.'" *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (quoting *Strickler*, 989 F.2d at 1381).

10

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

Evans avers that Defendants violated his Eighth Amendment rights by failing to provide sufficient food during Ramadan due to an institutional lockdown.[12]

---

[12] As stated on page nine, *supra*, Evans bases his Eighth Amendment claim on the following six instances: on August 31, 2010, he received a breakfast tray with "missing food items;" on September 2, 2010, he received a breakfast tray with spoiled milk "and was forced to not eat;" on September 3 and 4, 2010, he received his breakfast beyond the "time constraints set forth by religious edicts" and "was forced to abstain[ ] from any food or drink [until] the evening meal after sunset;" on September 6, 2010 "was missing the main course off his breakfast tray" and received the replacement tray well after sunrise and the fasting period had already started;

Defendants explain that inmates who practice Ramadan receive three meals outside of the time for fasting. (Vargo Aff. ¶¶ 5–6; Encl. A, at 2; Shear Aff. ¶ 4.) These meals include: (1) dinner after sundown; (2) a bag meal distributed in the evening hours that inmates can take back to their living areas and consume during the next four hours; and, (3) breakfast before sunrise. (Vargo Aff. ¶¶ 5–6; Encl. A, at 2; Shear Aff. ¶ 4.) Evans alleges that on these six instances he received inadequate breakfast, but he does not argue that Defendants failed to provide him with sufficient dinner meal trays or bag meals on those six days. Evans also makes no allegation that Defendants failed to provide sufficient meals on the additional eighty-four instances during the 2010 Ramadan fast.

Evans fails to satisfy either the objective or subjective component of his Eighth Amendment claim.[13] "The Eighth Amendment requires that inmates be provided 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (alteration in original) (some internal quotation marks omitted) (quoting *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)); *see also Wilson v. Johnson*, 385 F. App'x 319, 320 (4th Cir. 2010) (citing cases for proposition that Eighth Amendment requires nutritionally adequate food). In determining whether an Eighth Amendment violation has occurred, "[c]ourts consider the amount and duration of the deprivation of food." *Lockamy v. Rodriguez*, 402 F. App'x 950, 951 (5th Cir. 2010) (citation omitted) (finding deprivation of six

---

and on September 8, 2010, he received his breakfast tray "after his farji (morning prayer) salat had already been performed, thereby not permitting him the chance to eat breakfast without breaking his fast." (Compl. 1–2.)

[13] Evans fails to put forth evidence that Defendants Jabe, Robinson, Everett, Vargo, Shanks, and Halsey-Harris acted personally in the deprivation of his Eighth Amendment rights. Evans fails to introduce evidence that Defendants Jabe, Robinson, Everertt, Vargo, Shanks, and Halsey-Harris personally provided him with inadequate food or had any role in food service or food delivery to inmates. *See Wright*, 766 F.2d at 850.

meals in fifty-four hour period insufficient to state a claim absent allegation of injury as a result of missing meals); *see Berry*, 192 F.3d at 506–08 (finding deprivation of eight meals over seven-month period insufficient to state an Eighth Amendment claim absent specific allegations of physical harm).

Evans fails to proffer evidence that he sustained any injury, much less a serious or significant physical or emotional injury, from Sussex II's provision of incomplete or tardy breakfast meal trays on six instances. *See Strickler*, 989 F.2d at 1381. Evans neither establishes that he lost weight or that he has suffered other adverse physical effects, nor has he put forth evidence suggesting a substantial risk to his health. *See Lockamy*, 402 F. App'x at 951 (citing *Berry*, 192 F.3d at 508). At most he claims that he received "inadequate nutrition." (Compl. 1.) "[A]iry generalities [and] conclusory assertions" such as this "do not suffice to stave off summary judgment . . . ." *United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (citation omitted) (internal quotation marks omitted) (alterations omitted). Given that deficiency, Evans fails to establish an Eighth Amendment claim.

Moreover, Evans fails to produce evidence that Defendants knew of and disregarded an excessive risk to Evans's health. *Farmer*, 511 U.S. at 837. Evans fails to establish that Defendants actually perceived that Evans faced a substantial risk of serious harm from receiving incomplete or tardy breakfast trays on six instances. Accordingly, Claim Two will be DISMISSED.

## VI. RLUIPA AND FREE EXERCISE

### A. RLUIPA

RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Thus, to begin, Evans must demonstrate that Defendants' actions impose a "substantial burden" on his religious exercise. In determining if Evans has met this standard, the Court must answer two questions: "(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?" *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004); *see Couch v. Jabe*, 679 F.3d 197, 200–01 (4th Cir. 2012) (employing similar two-part inquiry). As discussed below, on the current record, Evans lacks entitlement to relief on his RLUIPA claim.

### B. Whether the Burdened Activities Constitute a Religious Exercise

"RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Couch*, 679 F.3d at 200 (quoting 42 U.S.C. § 2000cc–5(7)(A)). Evans's claim implicates one activity: receiving "sufficient calories, and meals served within the religiously required time period during the Muslim holy month of Ramadan." (Compl. 1.) In support of his claim, Evans alleges, in sum, that he received six tardy or incomplete breakfast trays during the ten-day lockdown that took place within the greater thirty-day Ramadan celebration. (Compl. 1–2.)

Celebrating Ramadan and engaging in fasting during the day as part of Ramadan constitute a religious exercise. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (citation

14

omitted). The breaking of the fast after sundown with an evening meal also likely qualifies as a religious exercise. Evans, however, fails to demonstrate that eating a third meal prior to sunrise amounts to a religious exercise. Nevertheless, as discussed below, Evans fails to establish that the occasional absence of a meal outside of the fasting period imposes a substantial burden on his religious exercise.

### C. Evans Fails to Demonstrate a Substantial Burden on His Religious Exercise

RLUIPA provides no definition of the term "substantial burden." *See Couch*, 679 F.3d at 200. The United States Court of Appeals for the Fourth Circuit determined that the Supreme Court's jurisprudence interpreting the Free Exercise Clause provides guidance on the issue. *See Lovelace*, 472 F.3d at 187. Thus, the Fourth Circuit has explained that a substantial burden

> is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand.

*Couch*, 679 F.3d at 200 (alterations and omission in original) (quoting *Lovelace*, 472 F.3d at 187). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his [or her] religion." *Krieger v. Brown*, 496 F. App'x 322, 325 (4th Cir. 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th

Cir. 2004));[14] *see Krieger*, 496 F. App'x at 326 (affirming grant of summary judgment where inmate failed to "show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs" (citing *Lovelace*, 472 F.3d at 187)). Thus, no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his or her religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).

Evans fails to establish that his receipt of six incomplete or tardy breakfast trays after daylight fasting began placed a substantial burden on his celebration of Ramadan or participation in the thirty-day fast. Instead, as discussed below, Evans demonstrates nothing "more than an inconvenience on [his] religious practice." *Smith*, 502 F.3d at 1278 (citing *Midrash Sephardi, Inc.*, 366 F.3d at 1227).

Evans fails to establish that Sussex II's deprivation of a timely or complete breakfast tray on six mornings during the greater thirty-day Ramadan observance caused him to modify his behavior and violate his religious beliefs. Inmates observing Ramadan, like all other inmates, received 2700 to 2800 calories daily. (Shear Aff. ¶ 5.) The evidence reflects that during Ramadan, Muslim inmates engaged in fasting between sunrise and sunset. (Vargo Aff. ¶ 6.) To accommodate these inmates, Sussex II provided: (1) a pre-dawn meal before fasting started; (2) a dinner meal after sunset to break the daily fast; and, (3) that inmates observing Ramadan received a bag meal later at night that could be taken back to living areas and consumed by the inmates in the next four hours. (Vargo Aff. ¶¶ 5–6; Encl. A, at 2.) Thus, the record establishes

---

[14] In *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011), the Supreme Court abrogated *Smith*'s ultimate holding that RLUIPA allows for monetary damages against state officials acting in their official capacity.

that on the six mornings that Evans received incomplete breakfast or breakfast served after dawn, Evans received two additional religiously appropriate meals after the fast ended each day.

No evidence exists that Evans was prevented from fasting or participating in the observance of Ramadan. Although Evans alleges that he received "inadequate nutrition" during the lockdown due to tardy or late breakfast meal trays (Compl. 1), conclusory allegations of this ilk fail to create a material dispute of fact. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (citation omitted). Evans admits that he was able to participate in the fast as he complains that his receipt of inadequate or late breakfast trays caused him to have no food until after sunset. (Compl. 1–2.) Although Evans was dissatisfied with the quantity of food provided, Evans puts forth no evidence that his failure to receive a morning meal on six days imposed a substantial burden on his participation in the fast or in the celebration of Ramadan. *See Norwood v. Strada*, 249 F. App'x 269, 271–72 (3d Cir. 2007) (finding no substantial burden when inmate denied seven religiously certified (halal) meals during three-day lockdown); *Garnica v. Wash. Dep't of Corr.*, --- F. Supp. 2d ----, 2013 WL 4094324, at *16–17 (W.D. Wash. Aug. 13, 2013); *cf. Neal v. McKune*, No. 11-3155-JTM, 2013 WL 1446791, *5–6 (D. Kan. Apr. 9, 2013) (finding no substantial burden, but "an inconvenience," when inmate alleged three missed and six hurried breakfasts during Ramadan in light of the availability of religiously acceptable dinner.)

For the reasons stated above, Evans fails to demonstrate that his receipt of tardy or incomplete breakfast trays substantially pressured him "'to modify his behavior and to violate his beliefs.'" *Couch*, 670 F.3d at 200 (quoting *Lovelace*, 472 F.3d at 187). Because Evans fails to demonstrate a substantial burden upon his religious exercise, Claim Three will be DISMISSED.

### D. Free Exercise

Similar to RLUIPA, in order for Evans to survive summary judgment for his First Amendment claim, Evans must demonstrate Defendants' conduct substantially burdens his religious exercise. *Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *5 (E.D. Va. Nov. 18, 2011). "RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States." *Id.* (citing *Lovelace*, 472 F.3d at 186). Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." *Van Wyhe v. Reisch*, 581 F.3d 639, 657–58 (8th Cir. 2009) (citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)). Accordingly, Claim 1(a) will be DISMISSED.

### E. Evans's Claim for Injunctive Relief Is Moot

Evans's RLUIPA claim arises from six isolated instances occurring from August 31, 2010 to September 8, 2010, while Sussex II was on lockdown. The lockdown and Ramadan observance ended on September 9, 2010. (Vargo Aff ¶ 7.) In 2011, 2012, and 2013, Sussex II was not placed on lockdown status during the Ramadan observance. (Vargo Supp'l Aff. ¶ 9.) Neither Evans, nor the record, establishes ongoing interference under RLUIPA with his religious fasting requirements. Indeed, the record establishes no complaints from Evans during the Ramadan observances of 2011, 2012, or 2013. (*Id.*)

"'[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the out-come.'" *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "[F]ederal courts have 'no authority to give opinions upon moot questions or abstract propositions, or to declare principles

or rules of law which cannot affect the matter in issue in the case before it.'" *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). Thus, "[o]nce an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of the claim." *Id.* at 287 (holding transfer or release moots claim for injunctive relief under RLUIPA).[15] Neither Evans, nor the record, establishes ongoing interference with his religious fasting requirements under RLUIPA. Thus, Evans's RLUIPA claim for injunctive relief is DISMISSED AS MOOT. *See, e.g.*, *Garnica*, 2013 WL 4094324, at *18 (finding RLUIPA claim "moot as Ramadan 2010 has long since passed").

## VII. CONCLUSION

Defendants' Supplemental Motion for Summary Judgment (ECF No. 53) will be GRANTED. Evans's Third Motion for an Extension of Time will be DENIED. (ECF No. 67).

An appropriate Order will accompany this Memorandum Opinion.

/s/ John A. Gibney, Jr.
United States District Judge

Date: 1/17/14
Richmond, Virginia

---

[15] If Evans demonstrates the action is "'capable of repetition, yet evading review,'" his claim may not be moot. *Incumaa*, 507 F.3d at 289 (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). Nevertheless, such a showing requires a "'demonstrated probability'" that the allegedly improper action "will reoccur again, and to the same complainant." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 483 (1982)). That showing is not made here. The record reflects no further incident in providing Evans with meals during the last three years of the Ramadan observance.